50 CCPA

**Application of George R. NORMAN, William M. LeSuer and Thomas W. Mastin.**

**Patent Appeal No. 6851.**

United States Court of Customs and Patent Appeals.

Nov. 14, 1962.

Rehearing Denied Feb. 13, 1963.

Oberlin, Maky & Donnelly, John F. Oberlin, Cleveland, Ohio (Almon S. Nelson, Washington, D. C., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for Com'r. of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Associate Judge JOSEPH R. JACKSON, Retired.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 11–20 of application Ser. No. 602,453, filed August 6, 1956, for "Esters of Organic Phosphino-dithioic Acids and Methods for Preparing Same." Notwithstanding the title, all claims on appeal are directed to method.

The subject matter of the claims is sufficiently indicated by claim 11 which reads:

"The method of preparing esters of phosphino-dithioic acids which comprises mixing

"(a)   a phosphinodithioic acid having the structure

where R and $R_1$ are saturated hydro-carbon radicals, with

"(b)   an approximately equivalent amount of olefinic compound

at a temperature within the range of 0–250°C."

There is no need to discuss the other claims or to distinguish them from one another. Patentability of all of them depends on the obviousness of their subject matter over the following references:

Augustine 2,528,732 Nov. 7, 1950
Hook et al. 2,565,920 Aug. 28, 1951
Cassaday 2,578,652 Dec. 18, 1951

It will be observed that the method claim is nothing more than the reaction of (a) with (b) at a temperature within the limits of a very broad range. No reliance is placed by appellants on the temperature aspect of the claimed invention in urging patentability and we shall therefore disregard it.

It is also unnecessary to discuss the references in any detail inasmuch as appellants admit that they all disclose "the reaction of phosphorodithioic acids having the structural formula with an olefinic compound."

The issue, therefore, is a narrow one: Would it have been obvious to one of ordinary skill in the relevant art, at the time the invention was made, to make the esters of phosphinodithioic acids which are within the scope of the claims by a method such as that shown in the references for making esters of phosphorodithioic acids? 35 U.S.C. § 103. Stated still more precisely, for no "method" is involved other than the simple combining of the reactants and allowing time for the reaction, would such a person skilled in the art expect that an olefinic compound *would react* with a phosphinodithioic acid to produce the ester, in the same way as the ester of phosphorodithioic acid is produced by reaction with an olefinic compound?

The reaction mechanism involved in all of the references and in the application at bar appears to be the same and appel-

lant does not question this. This mechanism is explicitly described in the Hood et al. patent. It is shown to be of a type wherein the olefinic compound attaches itself, through a carbon atom of its double bond, to the S of the --SH group of the acid thereby displacing the H of the --SH group and wherein a hydrogen attaches itself to the other carbon which formed the original double bond in the olefinic compound. This produces the esters which are described in appellants' application by the formula wherein R″ is an organic radical. The source of R″ is

the "(b)" element of the claim which is described in the specification thus:

"The second reactant named in the process, the organic compound which contains a non-benzenoid unsaturated linkage between adjacent carbon atoms, includes principally olefins, both alipathic and aromatic, esters of unsaturated acids, quinoid compounds, etc."

As showing that there is substantially no more to the "method" than bringing the chosen reactants together, we quote the following from the specification:

"As indicated previously the process is particularly desirable because of the ease of reaction and the lack of requirement of any unusual conditions or catalyst. In many instances it is necessarily [sic] only to bring the two reactants together at room temperature whereupon an exothermic reaction ensues. In other cases it is necessary to apply heat to the reaction mixture to initiate the reaction. In all cases, however, a temperature within the range of 0–250°C is suitable. Furthermore, although it may be desirable in a few instances to prolong the reaction conditions for 12–15 hours, in most cases

one or two hours is a sufficient time to insure a good yield of desired esters."

As shown in the references, organic compounds such as olefins react with phosphorodithioic acids and form addition products by attaching, through the opening up of their double bonds, to the S of the original –SH group of the acid.

The position of the Patent Office is that a chemist of ordinary skill in this field would expect that the same type of addition reaction would ensue if phosphinodithioic acid were substituted in the reaction and that the claimed reaction, or "method," would therefore be obvious. The examiner in his answer typified the reaction graphically thus:

### Applicant's reaction

### References' reaction

Quoting from appellants' brief before the board, "The reaction is simplicity itself: two reactants are mixed at a temperature within a limited range and the resulting reaction mixture is the product. Nothing can be simpler."

Before the board appellants made the same argument they make in this court in an effort to show unobviousness, namely, that there are several known differences in the chemical reactivities of phosphorodithioic acids and phosphinodithioic acids, four such differences being specified.[1] At the same time, however, appellants admitted before the board that "There are undoubtedly some chemical reactions which are common to both types of compounds * * *." After considering these arguments, the board rejected them on the basis of what appear to us to be sound reasons, as follows:

"In addition reactions with olefins, phosphorodithioic acids containing two ester linkages known to be more reactive than the corresponding hydrocarbon linkages in phosphinodithioic acids, might be expected to produce interfering reaction. Hence, where the more active phosphorodithioic acids are operative, the chemist of average skill would expect the corresponding, more stable, phosphinodithioic acids containing

the same functional $\geq$P-SH group to be similarly operative without interference.

---

1. The four specific matters mentioned are: (1) reaction with alcohols; (2) reaction with hydrogen chloride; (3) stability upon heating; and (4) reaction with steam. None of these are involved here.

"The reactions pointed out by the appellants as demonstrating differences between phosphinodithioic and phosphorodithioic acids are condensations or hydrolyses which are not related to the reaction here at issue, an addition across an olefinic double bond, no elements being eliminated. It has been admitted by appellants that there are undoubtedly chemical reactions common to phosphorodithioic and phosphinodithioic acids and these similarities would suggest to the chemist trying one where the other has been used even though it is known that there are also differences in other chemical reactions."

We have not found, either in the brief before us or in the oral argument, that appellants have refuted the foregoing reasoning. Rather they rely on a number of cases in this court and in the board which have decided other legal issues with respect to other chemical problems. We have considered the cases but point out, as we did in In re Magat, 240 F.2d 351, 354, 44 C.C.P.A. 735, 740, that the question of whether there is anything patentable "in applying or adapting a prior art process of producing one chemical substance to the production of another is one which must be determined on the basis of the particular circumstances of the individual case involved." Having considered all of the circumstances, as here afforded to us by the record and briefs, we see no error in the finding below of unpatentability by reason of obviousness of the subject matter claimed.

We are further confirmed in our conviction that the board was right by reading in appellants' brief before the board that

"The reaction of this invention is of course concerned with a chemical reaction between two functional groups. These two functional groups are the –PSSH group and the olefinic group. This particular reaction is the point of novelty of the invention * * *.

"Functional groups do not of course exist by themselves. They are, by the very definition of functional groups, attached to an inert radical. * * *.

"These inert groups are the two attached to the phosphorous [P] atom of component (a) and those attached to the carbons of the olefinic double bond in component (b). The inert groups of component (a) are defined most broadly in claim 11 as 'saturated hydrocarbon radicals.' "

As we read this, it is saying that the R and $R_1$ saturated hydrocarbon radicals in appellants' acids are *inert in the reaction with the olefinic compound*. The board has said, without contradiction by appellants, that the RO– groups in the prior art phosphorodithioic acids would be more reactive, yet they do not interfere with the joining of olefins by addition reaction at the –SH grouping. A fortiori, the same reaction would be expected to take place with phosphinodithioic acids and olefins, the more reactive RO– groups being replaced by "inert" (less reactive) R and $R_1$ saturated hydrocarbon radicals.

The decision of the board is affirmed.

Affirmed.